IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAVID G. HATCHER,

    Plaintiff,

    v.

CAROLYN COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 13-1847 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On November 8, 2013, Plaintiff David G. Hatcher (hereafter "Plaintiff") filed this action to obtain judicial review of the final decision of Defendant Acting Commissioner of Social Security (hereafter "Commissioner" or "Defendant"), who denied his application for disability benefits, finding that Plaintiff was not disabled prior to his last insured date of December 31, 2003. (Docket No. 1).[1] On May 27, 2014, the Commissioner answered the Complaint and filed a copy of the administrative record. (Docket Nos. 6 and 7). On June 30, 2013, Plaintiff filed a consent to proceed before a Magistrate Judge and the case was transferred to the undersigned. (Docket Nos. 10 and 12).[2] On July 28, 2014, Plaintiff filed his memorandum of law (Docket No. 13) and, on September 29, 2014, the Commissioner filed his memorandum of law. (Docket No. 16). After careful review, the Court VACATES

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

the decision of the Commissioner and REMANDS the present case to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On August 12, 2004, Plaintiff filed an application for disability benefits with an alleged onset date of disability of March 2, 2002. Plaintiff met the insured status requirement up to December 31, 2003. (Tr. p. 298). Therefore, the relevant time period in this case is substantially limited.

The application was initially denied, and it was also denied on reconsideration. (Tr. pp. 17). Plaintiff then requested an administrative hearing, where Plaintiff waived his right to be present, and the ALJ found that Plaintiff was not disabled. (Tr. pp. 17). A Complaint was then filed before this Court in Civil Case No. 10-1558 (MEL) challenging that determination, and the Court remanded the case to the ALJ in order to complete the record and issue a new decision. (Civil No. 10-1558 (MEL), Docket No. 16). (Tr. pp. 311-324). On May 11, 2011, a new hearing was held and Plaintiff again waived his right to be present. The ALJ again found Plaintiff not disabled. (Tr. pp. 298-307). The ALJ determined that Plaintiff had not engaged in any substantial gainful activity since his alleged onset date of March 2, 2002 until his last insured date, and that he had the following severe impairments: bipolar disorder and social phobia. (Tr. p. 300). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1526). (Id.). Although the ALJ found Plaintiff could not perform any of his previous jobs, he found Plaintiff could perform a limited range of unskilled work

which did not require contact with the public and/or frequent contact with supervisors and co-workers, and that there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. p 304-306). The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 287-290).

Plaintiff objects to the ALJ's final decision, alleging that he failed to deploy the correct legal standards by disregarding substantial evidence, and that as a consequence, he failed to correctly reflect Plaintiff's limitations in the hypothetical presented to the Vocational Expert. Therefore, Plaintiff argues the ALJ's decision is not based on substantial evidence. The Commissioner contends in turn that the ALJ properly relied on the Vocational Expert, that the administrative proceedings met the substantial evidence test, and that the ALJ correctly evaluated Plaintiff's residual functional capacity.

**STANDARD**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See, Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). A claimant will be found disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See, §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant

from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the claimant's residual functional capacity, as well as his/her age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work. §§ 404.1520(f).

In the case at bar, at step 4, the ALJ found that Plaintiff was unable to perform any of his past jobs as a restaurant manager. (Tr. p. 305). At step 5, the ALJ determined that considering Plaintiff's age, education, work experience and residual functional capacity, he could perform other jobs which existed in significant numbers in the national economy, primarily that of a Hand Packer or Cleaner II. (Tr. p. 306).

## LEGAL ANALYSIS

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See, Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by "substantial evidence", 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Ortíz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The term "substantial

David G. Hatcher v. Acting Commissioner of Social Security
Civil No. 13-1847 (CVR)
Opinion and Order
Page 6

---

evidence" has been defined as "more than a mere scintilla." It means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Furthermore, the Court's role is not to reinterpret the evidence or substitute its own judgment for that of the Commissioner. Colón v. Sec'y of Health and Human Servs, 877 F.2d 148, 153 (1st Cir. 1989). "The findings of the [Commissioner] are conclusive if supported by substantial evidence and should be upheld even in those cases in which the reviewing Court, had it heard the same evidence de novo might have found otherwise." Lizotte v. S.H.H.S, 654 F.2d 127, 128 (1st Cir. 1981). However, although the Court cannot second-guess the ALJ's credibility findings, it must make certain that the complete record has been considered by the ALJ in its analysis of each particular case. That is the basis for the Court's holding today.

This case presents a troubling issue inasmuch as the relevant period barely covers two (2) years and there are scant medical records for that time period. While there are a multitude of RFC's and evaluations dated after the relevant cutoff date (some even up to five (5) years afterwards), there are only two (2) treating sources for the relevant time period, to wit, notes from the Ponce School of Medicine's Centro de Salud Conductal del Oeste, and the records of treating physician Dr. Ricardo Fumero ("Dr. Fumero"), which are incomplete, as they only include assessments of Plaintiff's condition and do not include progress notes.

David G. Hatcher v. Acting Commissioner of Social Security
Civil No. 13-1847 (CVR)
Opinion and Order
Page 7

---

Since 1985, Plaintiff has been employed as a restaurant manager in several places.[3] The record shows that out of the four (4) places he worked at from 1985 through 2002, he was only employed a month or less at two (2) of these establishments (Fez, Inc., and Bob's Big Boy). (Tr. p. 79). He began having trouble at his last job as a Manager of Buffalo's Café in March of 2001 because of his verbally abusive and physically aggressive behavior towards his co-workers. This behavior escalated and ultimately resulted in his dismissal in March of 2002, which is the disability onset date. In the end, the record shows that Plaintiff was ultimately dismissed from all of his previous jobs due to his aggressive behavior. (Tr. p. 94).

Regarding Plaintiff's treatment, he was seen by Dr. Fumero from 1998 through 2007; specifically, twenty-nine (29) times from 1998 through 2002 for bipolar disorder of depressed type and social phobia. (Tr. p. 221, 272). After Plaintiff lost his job in 2002, he sought treatment at the Government clinic, but continued to see Dr. Fumero on and off until 2007. (Tr. p. 146). Progress notes from the clinic indicate that Plaintiff was generally stable without hallucinations or suicidal ideas (Tr. pp. 167-172) until August of 2004, when Dr. Ricardo Ramírez Glez found Plaintiff "completely disabled." (Tr. p. 187). The next month, in September, 2004, Dr. Fumero rendered an evaluation in which he stated, among others, that Plaintiff was "unable to keep a work schedule, does not complete tasks, does not resist receiving orders from supervisors", and was "unable to keep focus of attention

---

[3] It is relevant to note that Plaintiff was initially diagnosed with bipolar depression and social phobia in 1991, but had problems with his condition prior to that date (Tr. p. 94, 221) and had previously collected Supplemental Security Income ("SSI") benefits. These are mistakenly referred to in Dr. Fumero's September, 2004 Psychiatric Medical Report as "Social Security Disability-SSI" benefits. (Tr. p. 219). It is evident that this refers to SSI benefits, because if Plaintiff had received disability benefits, this case would not be before the Court.

and unable to complete the tasks of a normal workday." (Tr. p. 224). Two (2) months later, in November, 2004, Dr. Jeanette Maldonado rendered a diagnosis of bipolar disorder and stated that "[o]nset 3-02 as allegated (sic) is credible. He was unable to get recovered (sic) of his major emotional symptoms all through the PS IT since October- 98." (Tr. pp. 190).

Shortly after that, in January, 2005, Dr. Armando Caro ("Dr. Caro") examined Plaintiff and, although he found him well groomed, he indicated he had a foul smelling odor. (Tr. p. 192). Yet Dr. Caro found Plaintiff with good concentration and with preserved memory and diagnosed him with bipolar disorder, depressed. (Tr. pp. 191-192). He further concluded Plaintiff had problems with his primary support group, that his capacity for social interaction was impaired and his prognosis was guarded. Id.

Evaluating physician Dr. Luis Sánchez Rafucci performed a psychiatric review technique and an RFCA in February of 2005, where he found that Plaintiff was not significantly limited in most areas, and that by the cutoff date, he should have been able to understand, remember and carry out simple instructions, react appropriately to supervisors and sustain concentration for extended periods of time. (Tr. p. 212). This diagnosis was reaffirmed a few months later. (Tr. p. 211).

Dr. Fumero, Plaintiff's treating psychiatrist, rendered a thorough evaluation in April, 2005 that found Plaintiff with sleeping problems, suicidal thoughts, tense and anxious and with agitated pressure of speech. (Tr. p. 220). Dr. Fumero further stated that Plaintiff's manic behavior had clearly manifested itself that week, as he visited that doctor's

office on several occasions, that he had obsessive ideas, poor self esteem and diminished memory. Id. Dr. Fumero gave him a GAF score of 35.[4]

Dr. Orlando Reboredo ("Dr. Roboredo") performed an RFCA in June 2007, where he found Plaintiff moderately limited in six (6) and markedly limited in three (3) areas out of twenty (20) and found his condition did not present such a severe picture as Dr. Fumero had suggested. (Tr. p. 244.). Dr. Reboredo further found Plaintiff had the capacity to learn, understand, remember and execute simple tasks and could sustain the pace and attention of a regular workday or week. (Id.). Dr. Fumero's RFCA a month later painted a drastically different picture, where he found Plaintiff unable to meet competitive standards in fifteen (15) out of twenty (20) areas, no useful ability to function in three (3) areas and marked and extreme functional limitations. (Tr. p. 283-84).

Certainly this conflicting medical evidence of record could support a possible finding of Plaintiff not being disabled, simply because "the responsibility of weighing conflicting evidence, where reasonable minds could differ as to the outcome, fall on the Commissioner and his designee, the ALJ." Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). The amount of post-coverage date evidence that was considered in order for the ALJ to reach his determination, however, is troubling. While courts have reached different conclusions as to whether and how much post-coverage medical evidence should weigh in determining

---

[4] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work).

whether a condition was disabling during the coverage period, the First Circuit has held that "[m]edical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question [of] whether the claimant's impairment reached disabling severity before his insurance status expired." Padilla Pérez v. Sec'y of Health & Human Servs., 985 F.2d 552 (1st Cir. 1993) (unpublished); (*citing* Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 81 (1st Cir. 1982).; *see also* Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984); *and* Cooper v. Comm'r of Soc. Sec., 277 F.Supp.2d 748, 754 (E.D.Mich. 2003) ("Medical evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status."). However, in order for the evidence to be useful, it ought to be " 'reasonably proximate' " to the date last insured. Cooper, 277 F.Supp.2d at 754 (*quoting* Begley v. Mathews, 544 F.2d 1345, 1354 (6th Cir. 1976)).

The Court is at a loss to understand how a physician could render an accurate evaluation on a patient a full four (4) or five (5) years after his insured status ended. Certainly, the Court can see how an evaluation perhaps one (1) year, or two (2) later can aid in the determination of Plaintiff's residual functional capacity at the time his insured status ended, but the Court in unable to see the relevance in examinations older than that.

In the case at bar, Dr. Reboredo performed an RFCA dated June 2007, *five (5) years* after Plaintiff's insured status had expired. (Tr. pp. 228-244). Five (5) years from the onset date and four (4) years from the cutoff date is simply too remote to be able to determine what disability Plaintiff had, if any. The Court cannot accept this assessment after such a large time lapse.

David G. Hatcher v. Acting Commissioner of Social Security
Civil No. 13-1847 (CVR)
Opinion and Order
Page 11

The same applies to Dr. Fumero's RFCA and analysis dated July and October, 2007, yet Dr. Fumero simply restated his diagnosis from day one (1), and which he originally made a lot closer to the cutoff period- that Plaintiff is completely disabled. The Court therefore finds the ALJ erred in considering evidence after December, 2005 in its analysis of Plaintiff's residual functional capacity. See, Meredith v. Bowen, 833 F.2d 650 (7th Cir. 1987) ("While we sympathize with the claimant and her physical problems and we realize that she was diagnosed as totally disabled by Drs. Kachmann and Stibbens in 1984, these diagnoses simply are not relevant to her physical condition some eleven years earlier in 1973 when her insured status expired").

Besides the inordinate amount of time lapsed between the last RFCA's performed and the cutoff date, the second problem with this case is that the ALJ chose to practically ignore one (1) of the two (2) only treating sources for the relevant time period, and relied instead on the multiple evaluations that were done after the cutoff date in order to conclude that Plaintiff was not disabled. The Court is not convinced that this was the correct approach in this particular case.

Under the "treating physician rule," the Commissioner generally must accord greater weight to the opinions of a claimant's treating sources than other sources because of the treating doctors' longitudinal perspective on the claimant's condition. 20 C.F.R. § 404.1527(d)(2). It has been clearly established that even though claimants generally bear the burden of persuasion at step four, the Commissioner, through the ALJ, still has a duty to develop an adequate record on which reasonable conclusions may be based. See, Carrillo

Marin v. Sec'y, 758 F.2d 14, 17 (1st Cir.1985). Specifically, the regulations in effect when the ALJ rendered his opinion provided that:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled ... [w]e will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques....20 C.F.R. § 404.1512(e)(1) (Westlaw 2011).[5]

Thus, the ALJ had a duty to solicit additional information from the medical practitioner in order to flesh out an opinion for which highly relevant medical support or evidence was not readily discernable. See, Smith v. Apfel, 231 F.3d 433, 437–38 (7th Cir. 2000) (holding the ALJ's duty to develop the record included soliciting updated medical records when the ALJ did not afford the treating doctor's opinion controlling weight on that basis) and Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) ("If the ALJ thought he needed to know the basis of [medical] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").

In the present case, with such scant records to establish Plaintiff's condition, and where progress notes were not included in the record that had direct bearing upon

---

[5] The Social Security Administration has since removed this provision from its regulations. See, 77 FR 10651 (Feb. 23, 2012) (amending 20 C.F.R. § 404.1512).

David G. Hatcher v. Acting Commissioner of Social Security
Civil No. 13-1847 (CVR)
Opinion and Order
Page 13

---

Plaintiff's condition on or near the covered period, it was the ALJ's duty to ask for additional information in the form of the treatment notes in order to complete the record. As a matter of fact, the ALJ specifically pointed to the lack of Dr. Fumero's progress notes in the record, (Tr. p. 303) and yet he failed to complete the record by requesting them. While this may not be important in some cases, in this particular case, where the physician was Plaintiff's treating physician for the relevant period, it becomes highly relevant. Ironically, while the ALJ states that Dr. Fumero's conclusion that Plaintiff's disorders were severe is not supported by the evidence "on the whole record during the period at issue", he failed to request and examine relevant documentation from the period at issue precisely from the source that was concluding that Plaintiff was disabled. Thus, the record the ALJ examined cannot be considered "the complete record."

In sum, the ALJ failed to complete the record, relying instead on medical data that was years past the cutoff date and rejecting the opportunity for first hand, treating information within the relevant period. This lack of evidence may have altered the ALJ's final conclusion in the present case and could certainly prejudice Plaintiff. The undersigned therefore VACATES the final decision of the Commissioner and REMANDS this case to the ALJ, in order for him to further develop the medical record with treating physician Dr. Fumero's progress notes of Plaintiff's visits to his office.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge VACATES the final decision of the Commissioner and REMANDS the case so that the ALJ may further and completely develop the record, as instructed herein.

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 31st day of October 2014.

                                           S/CAMILLE L. VELEZ-RIVE
                                         CAMILLE L. VELEZ RIVE
                                         UNITED STATES MAGISTRATE JUDGE